# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

CHESTER L. PRICE, )
 )
       Plaintiff, )
 )
v. ) Case No. CIV-16-079-KEW
 )
NANCY A. BERRYHILL, Acting )
Commissioner of Social )
Security Administration, )
 )
       Defendant. )

## OPINION AND ORDER

Plaintiff Chester L. Price (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED to Defendant for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 59 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a pest control technician, welder, and brand and shear operator (sheet metal worker). Claimant alleges an inability to work beginning March 8, 2013 due to limitations resulting from seizure disorder and back pain and spasms.

**Procedural History**

On March 25, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 2, 2014, an administrative hearing was held before Administrative Law Judge ("ALJ") Lantz McClain by video with Claimant appearing in Muskogee, Oklahoma and the ALJ presiding in Tulsa, Oklahoma. By decision dated October 27, 2014, the ALJ denied Claimant's request for benefits. The Appeals Council denied review of the ALJ's decision on January 27, 2016. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) improperly

4

relying upon the testimony of the vocational expert; (2) depriving Claimant of due process; (3) failing to find Claimant's seizure disorder meets or equals a listing; (4) failing to properly consider, weigh, and evaluate the medical evidence; (5) failing to consider all of Claimant's impairments properly throughout the sequential evaluation; and (6) failing to perform a proper credibility determination.

### Vocational Expert Testimony

In his decision, the ALJ found Claimant suffered from the severe impairment of seizure disorder. (Tr. 21). The ALJ determined Claimant retained the RFC to perform a full range at all exertional levels with the non-exertional limitations of seizure precautions, i.e. avoiding hazards such as heights and open machinery and not drive as a part of work. (Tr. 24). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of hand packer and dishwasher, both of which he found existed in sufficient numbers in the regional and national economies. (Tr. 29). As a result, the ALJ determined Claimant was not disabled from March 8, 2013 through the date of the decision. Id.

Claimant contends the vocational expert's testimony conflicted with the *Dictionary of Occupational Titles* ("DOT") and the ALJ

failed to elicit an explanation for the conflict. Claimant first contends the ALJ and vocational expert identified his past relevant work of hand packer as medium work when it is, in fact, designated by the DOT to require light work. The DOT from the source utilized by this Court identifies the job of hand packager as requiring medium work. *See* DOT #920.587-018, 1991 WL 687916. Claimant also states that the hand packager job requires occasional proximity to moving mechanical parts. This statement is also inaccurate, as the DOT for both the hand packager job and the dishwasher job state, "Moving Mech. Parts: Not Present – Activity or condition does not exist." Id.; DOT #318.687-010, 1991 WL 672755. Consequently, no conflict with the DOT exists in the vocational expert's testimony.

Claimant next asserts the ALJ should have considered his hand tremors and shoulder problems as precluding his ability to engage in his past relevant work because both of these jobs require constant reaching and handling. Claimant does not direct the Court to the references to these conditions in the medical record. However, as the ALJ notes, Dr. Gary Postelwait found Claimant to be "negative" for tremors, in spite of Claimant's complaints to the contrary. (Tr. 300). In a consultative examination, Dr. Beth Jeffries stated that she did not observe any tremors during the examination. (Tr. 290). The ALJ was within his prerogative to

reject this limitation. Other than stiffness, the "shoulder problems" to which Claimant refers in the briefing are not supported by medical evidence. This Court attributes no error to this analysis or to the vocational expert's testimony.

**Denial of Due Process (Duty to Develop the Record)**

Claimant couches his next contention as one concerning a denial of due process. In fact, Claimant contends the ALJ failed to adequately develop the record by not ordering further consultative physical and neurological examinations. Claimant appears to argue that the ALJ should have ordered a consultative examination of undefined "nonsevere impairments." He, then, contends that an unsatisfactory record of Claimant's anticonvulsant blood levels exists in the record.

The relevant Ruling addresses the evaluation of low anticonvulsant blood levels. It does provide that "information concerning current blood levels should be purchased when the existing evidence does not contain blood drug levels and a favorable decision appears to be indicated." Soc. Sec. R. 87-6 *3, 1987 WL 109184. In this instance, the ALJ determined that Claimant's seizure disorder was controlled by medication as indicated by Dr. Harold Goldman's medical record dated October 1, 2013. (Tr. 26, 348).

7

The problem with this conclusion lies with the failure to recognize the subsequent records from Dr. Goldman which indicate Claimant's seizure condition continued. Dr. Goldman stated on March 11, 2014 that he "tried multiple medications and [the seizures] are not amenable to medication. He has seizures at least six to eight times a month. These are minor motor seizures but they are accompanied by unconsciousness and period of confusion after the seizure. . . . I am afraid that this is a case in which his seizures will not be able to be controlled." (Tr. 346).

The record is incomplete as to the anticonvulsant blood levels as required by the Ruling and the ALJ did not adequately address the lack of testing, instead relying upon an incomplete conclusion that Claimant's condition was controlled in order to conclude that a favorable decision was not indicated. On remand, the ALJ shall obtain this testing in order to adequately develop the record in accordance with Soc. Sec. R. 87-6.

Claimant also contends the ALJ should have ordered further neurological testing based upon Dr. Jeffries findings that testing would "provide more specific information in terms of whether theses are pseudo seizures, or some other type of seizures and more importantly, what the impact is on Mr. Price's ability to function." (Tr. 290). While giving Dr. Jeffries opinions rendered

in the case "significant weight," he did not explain the basis for not obtaining the additional testing advised by Dr. Jeffries. On remand, the ALJ shall explain the failure to obtain the neurological testing or order the testing to be performed.

## Listing Evaluation

Claimant also contends the ALJ should have concluded his seizure condition met or equaled a listing. The ALJ evaluated Claimant for Listing 11.02 (convulsive epilepsy) and 11.03 (non-convulsive epilepsy). He cited to the requirements of Soc. Sec. R. 87-6 and found that Claimant lacked (1) a satisfactory description by the treating physician of the treatment regimen and response and corroboration of the nature and frequency of seizures, to permit an informed judgment and impairment severity; and (2) a record of anticonvulsant blood levels. (Tr. 24). Without further explanation, other than that the information was not included in the record, the ALJ found Claimant did not meet these listings. (Tr. 23).

This Court has already determined that the ALJ failed in developing the record in not purchasing the anticonvulsant blood level testing. Additionally, the expectations of the ALJ are unclear as to the treatment records from Dr. Goldman, Claimant's treating physician. Many of the records were submitted post-

hearing but should have been considered. They contain considerable information on Claimant's treatment. (Tr. 305, 340-366). On remand, the ALJ shall re-evaluate his step three findings after obtaining the blood level testing and examining the treatment record.

**Consideration of the Medical Opinion Evidence**

Claimant contends the ALJ did not properly consider and weigh the medical opinion evidence. The ALJ found Dr. Goldman's opinions were not entitled to "controlling weight" because of "inconsistency regarding the effectiveness of the claimant's seizure medication. . . ." He also criticized the absence of seven years of treatment records which he found "clouds" the nature and extent of Dr. Goldman's treatment relationship with Claimant. (Tr. 27). Rejecting the opinion of a treating physician on the basis of the ALJ's perceived effectiveness of medical treatment smacks of the impermissible substitution of an ALJ's medical opinion for that of a qualified medical professional. Hamlin v. Barnhart, 365 F.3d 1208, 1220 (10th Cir. 2004). As for the lack of treatment records, the ALJ certainly may consider this fact but the longitudinal record is still extensive, covering approximately two and a half years during which Dr. Goldman attended Claimant on numerous occasions.

Additionally, even if the ALJ was justified in declining to give Dr. Goldman's opinion controlling weight, he was still obligated to explain the reduced weight he did accord the opinion. *See* Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). He did not do this. On remand, the ALJ shall re-examine Dr. Goldman's opinion, his treatment records, and provide an appropriate analysis of the weight he gave the opinion of this primary treating physician.

Claimant also contends the ALJ should have evaluated the opinion of Dr. Gary L. Postelwait. While this Court does not note any opinions *per se* that Dr. Postelwait provided on Claimant's condition other than diagnoses which the ALJ noted, the ALJ should re-evaluate all opinion evidence on remand.

Claimant asserts the ALJ failed to properly consider Dr. Jeffries' opinions that Claimant suffered from a cognitive disorder. This Court has stated that additional neurological testing should be ordered consistent with Dr. Jeffries' opinion. The ALJ should re-evaluate her opinion after the testing is obtained.

**Consideration of Impairments at All Steps**

Claimant argues a "catch all" issue that numerous other conditions which he alleged at various times should have been

11

considered by the ALJ. This Court has rejected the argument that tremors should have been accommodated in the RFC. The effects of the remaining conditions, though non-severe, should be addressed by the ALJ.

### Credibility Determination

The actual testimony which the ALJ determined to be "not entirely credible" is unclear. He cites to testimony that Claimant quit working because of his seizures, which the ALJ concluded was Claimant's only "credible severe impairment." (Tr. 26). He also cited to the third party statements of his wife and sister which he found to be of "limited weight." (Tr. 27).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of

any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. He is certainly under the obligation to state which statements by Claimant are not credible. The ALJ should also re-evaluate Claimant's credibility in light of his insights into any new evidence developed in the record.

Additionally, since the ALJ's decision in this matter, the Social Security Administration has revised its rulings on evaluating statements related to the intensity, persistence, and limiting effects of symptoms in disability claims - what heretofore has been known as "credibility" assessments. Soc. Sec. R. 16-3p, 2106 WL 1119029 (March 16, 2016), superceding Soc. Sec. R. 96-7p, 1996 WL

13

374186 (July 2, 1996). The ALJ shall apply the new guidelines under Soc. Sec. R. 16-3p in evaluating Claimant's testimony regarding "subjective symptoms".

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED to Defendant for further proceedings**.

IT IS SO ORDERED this 25th day of September, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE